UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        x
IN RE MARSH & McLENNAN COMPANIES, INC.  x      MDL No. 1744
SECURITIES LITIGATION                   x      Master File No.
                                        x      04 Civ. 8144 (SWK)
----------------------------------------X
                                        x
THIS DOCUMENT RELATES TO:               x      **OPINION AND ORDER**
ALL ACTIONS                             x
                                        x
----------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

In an Order dated July 19, 2006 (the "July 19 Order"), the Court partially granted the defendants' motions to dismiss this litigation.[1] At the Court's direction, the plaintiffs submitted a proposed Second Amended Complaint ("SAC") accompanied by a motion for leave to amend. The plaintiffs contend that the SAC omits all parties and counts that were dismissed by the July 19 Order and makes appropriate revisions to the allegations carried over from the Amended Complaint ("AC"). The remaining defendants--Marsh & McLennan Companies, Inc. ("MMC"), Marsh, Inc. ("Marsh"), Jeffrey Greenberg ("Greenberg"), and Roger E. Egan ("Egan") (collectively "Defendants")--oppose the SAC on several grounds. For the reasons set forth below, the motion for leave to file the SAC is granted, subject to the limitations indicated herein. In addition, the claims and parties omitted

---

[1] See also In re Marsh & McLennan Cos., Inc. Sec. Litig., MDL No. 1744, 04 Civ. 8144(SWK), 2006 WL 2057194 (S.D.N.Y. July 20, 2006).

from the SAC, and those now ordered to be removed from the SAC, are hereby dismissed with prejudice.

## I.   The Additional Puffery Allegations Challenged by Defendants Must Be Stricken From the SAC

In the July 19 Order, the Court dismissed certain classes of the AC's allegations as mere puffery. Although the Court only cited to three paragraphs of the AC, those particular passages served as examples of the sort of broad, general statements that are insufficient to state a claim for securities fraud. July 19 Order at 41 (citing Lasker v. New York State Elec. & Gas Corp., 85 F.3d 55, 59 (2d Cir. 1996) (per curiam); In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595, 633 (S.D.N.Y. 2005)). The three allegations expressly cited in the July 19 Order have been omitted from the SAC. Defendants now argue that a number of additional allegations are also properly characterized as puffery, and thus must be removed from the SAC.

To begin with, the July 19 Order states that broad, general allegations "that MMC misrepresented its commitment to clients and adherence to ethical practices" rely on statements which "amount to no more than puffery," and thus are "insufficient to state a claim for securities fraud." Id. at 40-41. It then notes that some related statements were material and "sufficiently connected to the allegations of steering" to withstand a motion to dismiss. Id. at 41. In other words, actionable allegations

must be particularized, material, and sufficiently related to the undisclosed misconduct alleged in the complaint. See In re JP Morgan Chase, 363 F. Supp. 2d at 633.

The July 19 Order sustained three narrow classes of alleged misrepresentations: (1) "disclosures regarding the nature of services provided in exchange for contingent commissions;" (2) "statements regarding the criteria brokers consider when placing insurance business for the Company's clients;" and (3) "disclosures that Marsh's clients were fully apprised of contingent commissions." July 19 Order at 37, 41. General statements regarding MMC's market leadership do not fall within any of these categories, nor do they stand on their own as actionable misrepresentations. For instance, statements attributing MMC's leadership position in its diverse business areas to initiatives such as "promoting a spirit of partnership throughout the company" (SAC ¶ 317) or "the selection, training and development of . . . talent" (SAC ¶¶ 323, 330, 380, 400) are too vague to have misled a reasonable investor about alleged misconduct at Marsh. Similarly, the assertion that "delivering the finest and most comprehensive professional services" is "vital to the creation of long-term value for our shareholders" is not the sort of representation that a reasonable investor would rely upon in making an investment decision. (SAC ¶ 326.)

Defendants also contest the SAC's retention of a number of allegations in which Defendants refer to MMC clients in general terms. Not every statement that mentions MMC's clients is material or sufficiently related to allegedly improper insurance placements to state a claim for securities fraud. Greenberg's assertion that risk and insurance professionals help clients manage risk (SAC ¶ 335) cannot reasonably be said to affect an investor's decision-making or to obscure the existence of steering and bid-rigging at Marsh. Nor is a broad statement about MMC's overarching capacity to assist generic MMC clients (SAC ¶ 347) anything more than puffery.

Finally, MMC contests alleged misrepresentations regarding its "commitment to client service and professional standards" (SAC ¶ 364) and "leadership responsibilities that include creating a culture of high ethical standards and commitment to compliance" (SAC ¶ 373). These are precisely the types of statements that were dismissed by the July 19 Order, and must be removed from the SAC as well. July 19 Order at 41; see also In re JP Morgan Chase, 363 F. Supp. 2d at 633 (dismissing allegations that contain nothing more than "generalizations regarding integrity, fiscal discipline and risk management").

II. **Allegations of MMC's Scienter Are Sufficient**

At the Court's direction, the plaintiffs have revised their complaint so as to distinguish between MMC and its subsidiary,

Marsh, wherever feasible. Despite these efforts, the corporate defendants argue that the SAC fails to sufficiently distinguish between the two entities and often just substitutes the generic term, Marsh, with the phrases "MMC and Marsh, Inc." or "MMC through Marsh, Inc." In addition, MMC argues that the revisions now make clear that the plaintiffs have not adequately pleaded MMC's scienter, and seek leave to file a motion to dismiss on that discrete issue.

MMC's arguments must be considered in the context of this litigation's procedural posture. In the July 19 Order, the Court sustained several claims against Defendants after considering their motions to dismiss. As observed in that Order, when ruling on a motion to dismiss, "[t]he role of the court is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" July 19 Order at 18 (quoting Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003)). Courts must keep in mind that, at the pleading stage, plaintiffs do not have the benefit of discovery, hence the court's duty is to "accept[] all the allegations in the Complaint as true and draw[] all reasonable inferences in [the plaintiffs'] favor." Caiola v. Citibank N.A., 295 F.3d 312, 321 (2d Cir. 2002).

Without the benefit of discovery, and relying primarily on public documents and confidential witnesses, the plaintiffs

successfully stated several claims against both MMC and Marsh. The Court foresaw that the plaintiffs might seek to amend their complaint, and asked that they more clearly distinguish between the two entities if they did choose to amend. As the plaintiffs partially relied on summary documents bearing on MMC and Marsh's alleged misconduct, the Court was fully aware that the plaintiffs might not be able to distinguish between the actions of the parent or its largest subsidiary in every instance, hence its reservation that the distinction be made wherever feasible.[2] After the benefit of discovery, the plaintiffs will be required to more clearly define their claims, but at this stage, their allegations against MMC and Marsh are sufficient.

MMC also requests leave to file a second motion to dismiss on the issue of scienter, arguing that the case for its scienter has been undermined by revisions to the SAC. MMC's request is denied. While the Court notes that the SAC now fails to allege that MMC employees attended Global Broking meetings at which steering was discussed, that is the sole difference in scienter pleadings between the AC and SAC. The allegations on which the Court grounded its scienter holding are not fatally undermined

---

[2] As noted in the July 19 Order, the plaintiffs allege that Marsh is the largest of MMC's subsidiaries, wholly owned and highly integrated, and generating approximately sixty percent of its parent's revenues during the class period. July 19 Order at 60. It is not unreasonable that the plaintiffs might have difficulty attributing certain activities to one entity rather than the other at the pleading stage.

by this revision. See July 19 Order at 59-61 (finding MMC's scienter properly pleaded on the basis of multiple allegations). After the parties have undergone reasonable discovery, the plaintiffs will be expected to provide evidence of MMC's scienter or face summary judgment for that defendant.

## III.  Allegations against Defendants Greenberg and Egan

Plaintiffs Greenberg and Egan, the only remaining individual defendants in this litigation, each move to strike portions of the SAC. In light of the commonality of their arguments, the Court will discuss their concerns together.

### A. Allegations of Greenberg and Egan's Scienter Prior to May 10, 2004, Are Appropriate

Greenberg and Egan argue that allegations of their scienter prior to May 10, 2004, the date upon which the Court found that their scienter had been adequately pleaded, should be stricken from the SAC. A quick review of the July 19 Order belies this argument.

The July 19 Order stated that the pre-May 10, 2004 allegations were insufficient on their own to raise a strong inference of scienter, but noted that the allegations did "provide some evidence of scienter." July 19 Order at 67. In fact, the Court found that Greenberg and Egan's scienter was adequately pleaded as of May 10, 2004, on the basis of circumstantial allegations spanning the entire class period,

MMC's public acknowledgement of the New York Attorney General's Investigation on May 10, 2004, and the two defendants' subsequent actions and statements. <u>See</u> July 19 Order at 67-70.[3] Viewed together, these allegations constitute strong circumstantial evidence of conscious misbehavior or recklessness and thus are sufficient to raise an inference of Greenberg and Egan's scienter. Consequently, the Plaintiffs may retain relevant pre-May 10, 2004 allegations in the SAC as they tend to show the defendants' scienter after that date.[4]

### B. The SAC's Use of Pleading Groups Is Acceptable

Greenberg and Egan also contest the SAC's retention of the "Senior Management Defendants" pleading group, their inclusion in that group, and general allegations against generic "Defendants." While the plaintiffs may continue to employ pleading groups to allege knowledge or actions that are shared by multiple defendants, the record shall show that claims against Greenberg and Egan arise only after May 10, 2004.

---

[3] In a similar fashion, the Court found that certain allegations regarding misconduct at MMC's other subsidiaries were, by themselves, insufficient to raise a strong inference of scienter, but "joined with the Complaint's other scienter allegations," were capable of supporting the defendants' scienter. July 19 Order at 65 n.14.

[4] Greenberg's request that the Court now dismiss the claims against him for failure to plead scienter is also denied for this same reason. That request is denied for the additional reason that the Court, in its Order of August 25, 2006, explicitly stated that "[s]ubstantive challenges to the July 19 Order will not be entertained under the guise of an opposition to Plaintiffs' compliance with that Order."

Greenberg and Egan's first grievance relates to the SAC's retention of the Senior Management Defendants pleading group. In the AC, this group was used to state allegations common to all defendants in positions of senior management at MMC and Marsh. Following the dismissal of claims against all of those individuals except for Greenberg and Egan, the two remaining individual defendants argue that they are not sufficiently similarly situated to warrant their inclusion in a pleading group. The Court disagrees. Where allegations are common to Greenberg and Egan, they may be alleged against those defendants jointly. Thus allegations regarding the magnitude of the revenues (SAC ¶¶ 429-33), Marsh's overall business protocol (SAC ¶¶ 434-54), and the duty to monitor contingent commissions (SAC ¶¶ 461-70), may be alleged against Greenberg and Egan jointly, as both men would hold this common knowledge by virtue of their respective positions at MMC and its subsidiary.[5]

Greenberg draws particular attention to SAC paragraphs 455-460. He argues that the Court found these allegations impermissibly conclusory with regard to the Senior Management Defendants' scienter, and that the SAC fails to supplement those allegations sufficiently to now raise an inference that Greenberg and Egan were involved in the concealment of improper

---

[5] General allegations of the Senior Management Defendants' scienter at paragraphs 472-485 of the SAC are also acceptable.

activities. These allegations, however, may supplement MMC and/or Marsh's scienter, and thus may be retained for that purpose in a portion of the complaint unrelated to the scienter of Greenberg and Egan.

Finally, with respect to Greenberg and Egan's claims that allegations against unspecified "Defendants" are impermissible, the plaintiffs acknowledge that they have only stated claims against Greenberg and Egan from May 10, 2004, until the end of the class period. (Pls.' Mot. for Leave to Amend 2 n.2.) Accordingly, any references to "Defendants" prior to that date cannot, and do not, include Greenberg and Egan. The use of the term "Defendants" may be retained, but that term in no way implies Greenberg and Egan's liability prior to May 10, 2004.

## IV.  All Claims That Have Not Been Realleged in the SAC Are Dismissed with Prejudice

As the plaintiffs have chosen not to cure their allegations with respect to the theories, claims, and parties dismissed by the July 19 Order, those portions of the AC are now dismissed with prejudice. In addition, the puffery allegations noted in this Order are to be excised from the SAC and are hereby dismissed with prejudice.

The plaintiffs' final amended complaint should be filed with the Court and served on opposing counsel no later than fifteen days after the entry of this Order. At that time,

Defendants, subject to any separate agreement reached by the parties, will have thirty days to answer the allegations.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           September 27, 2006

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 
DATE FILED: 9/27/06

11