UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

IN RE MARSH & McLENNAN COMPANIES, INC. x   MDL No. 1744
SECURITIES LITIGATION               x   Master File No.
                                       x   04 Cv. 8144 (SWK)

----------------------------------------X
                                       x

THIS DOCUMENT RELATES TO:        x
                                       x

M.F. HENRY v. GREENBERG et al.,  x  **OPINION AND ORDER**
04 Cv. 8516 (RMB), 05 Cv. 2020 (RMB)  x
                                     x

----------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

On March 13, 2007, Plaintiff M.F. Henry ("Henry") filed a Third Amended Complaint (the "TAC") alleging that corporate defendant Marsh & McLennan Companies, Inc. ("MMC" or the "Company"), as well as various MMC directors (the "Director Defendants")[1] violated section 14(a) of the Securities Exchange Act and Securities & Exchange Commission ("SEC") Rule 14a-9.[2] The defendants have moved for dismissal pursuant to principles of res judicata, Rules 12(b)(6) and 9(b) of the Federal Rules of

---

[1] Plaintiff Henry names ten individual defendants, all of whom are former or current directors of MMC: Lewis W. Bernard ("Bernard"), Zachary W. Carter ("Carter"), Oscar Fanjul ("Fanjul"), Stephen R. Hardis ("Hardis"), Gwendolyn S. King ("King"), the Right Honorable Lord Ian Bruce Lang of Monkton ("Lang"), David A. Olsen ("Olsen"), Morton O. Schapiro ("Schapiro"), Adele Simmons ("Simmons"), and Michael G. Cherkasky. The Court uses the term "Director Defendants," except when referring to certain defendants as individuals.

[2] For brevity's sake, the Court refers to violations of the statute and rule collectively as "section 14(a) violations," and to the claims arising under both sources as "section 14(a) claims."

Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). For the reasons that follow, the Court grants the defendants' Rule 12(b)(6) motion and dismisses the TAC with prejudice.

## I.    BACKGROUND

Familiarity with the general context of this litigation is presumed. See generally In re Marsh & McLennan Cos. Sec. Litig., 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ("Marsh I"); see also In re Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No. 159 (explaining Henry's entry into the litigation). The Court limits its discussion here to those facts and circumstances pertinent to the instant motion.

On February 10, 2005, Henry filed an action in this District on behalf of herself and derivatively on behalf of MMC, see generally Henry v. Greenberg, 05 Cv. 2020 (RMB), Dkt. No. 1, averring federal securities law violations stemming from the New York State Attorney General's allegations that MMC had engaged in illegal bid rigging. See Marsh I, 501 F. Supp. 2d at 459, 461-65 (explaining factual allegations as related by securities litigation plaintiffs). The case was assigned to Judge Berman and was consolidated with the shareholder derivative litigation pending before him. Henry v. Greenberg, 05 Cv. 2020 (RMB), Dkt. Nos. 3-4. Henry later amended her complaint to include claims against MMC's directors under sections 10(b), 14(a), and 20(a)

of the Securities Exchange Act (the "Henry Securities Claims"). In re Marsh & McLennan Cos. Derivative Litig., 04 Cv. 8516 (RMB), Conf. Tr., Mar. 16, 2005. On June 12, 2006, Judge Berman severed the Henry Securities Claims from the shareholder derivative litigation pending before him so that those claims could be transferred to this Court for consideration in connection with the consolidated securities class action litigation then pending before it (the "Consolidated Securities Litigation"). In re Marsh & McLennan Cos. Derivative Litig., 04 Cv. 8516 (RMB), Conf. Tr., June 12, 2006. As Henry's section 10(b) and 20(a) claims were directly subsumed by the Consolidated Securities Litigation, the Court ordered Henry to file an amended complaint solely addressing her section 14(a) claim by August 18, 2006. In re Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No. 129. After a series of procedural missteps, see In re Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No. 159, Henry eventually filed the TAC on March 13, 2007. In re Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No. 165-2.

In the TAC, Henry alleges that MMC and the Director Defendants violated section 14(a) and Rule 14a-9 by making false statements of material fact and fraudulent omissions in Proxy Statements disseminated on March 31, 2005, and March 30, 2006, in connection with MMC's Annual Meetings of Shareholders held on

May 19, 2005, and May 18, 2006.[3] (Pl.'s Compl. ¶ 128, 131.). The Proxy Statements pertained to voting concerning, _inter alia_, the re-election of certain sitting directors; a proposed exchange, under the Company's Equity Compensation Plans, of "certain stock options held by the Company's employees that are 25% or more 'underwater'" (the "Options Exchange") (Pl.'s Compl. ¶ 129); and the ratification of the appointment of Deloitte & Touche LLP ("D&T") as Marsh's auditor. Henry identifies three disclosure failures that correspond with each of these votes. Specifically, Henry alleges that the 2005/06 Proxy Statements failed to disclose (1) the extent to which the entire Board of Directors was responsible for wrongdoing that caused the Company substantial financial harm; (2) that the Options Exchange would benefit many officers of the Company and its subsidiaries who were direct participants in the wrongdoing described in the TAC; and (3) that D&T had failed to fulfill its professional duties as independent auditor of the Company's financial statements and had a long history of similar failures. (Pl.'s Compl. ¶ 131.)

The defendants now move for dismissal on several grounds. The Director Defendants named in the Consolidated Securities Litigation[4] argue that Henry's section 14(a) claims are barred by

---

[3] The claim enumerated in the TAC is a direct claim only. (See Pl.'s Compl. 2; Pl.'s Letter 2, Mar. 13, 2007.)

[4] This group consists of defendants Bernard, Carter, Fanjul, Hardis, King, Lang, Olsen, Schapiro, and Simmons. See In re

principles of res judicata. See generally In re Marsh & McLennan
Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No. 172 ("Defs.' 2d
Mot."). In the alternative, these defendants join remaining
defendants MMC and Michael G. Cherkasky in arguing that (1) the
TAC fails under Rule 12(b)(6) to state a claim upon which relief
can be granted because the defendants were under no duty to
disclose the information omitted from the Proxy Statements; and
that the TAC does not satisfy the pleading requirements of Rule
9(b) and the PSLRA because it fails to allege adequately that
(2) the defendants possessed scienter, and (3) the claimed
omissions were misleading or fraudulent. See generally In re
Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No.
169 ("Defs.' 1st Mot.").

---

Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No.
172 ("Defs.' 2d Mot.") 1.
    The Director Defendants also name Robert Erburu ("Erburu"),
another director, as one of their number. (See Defs.' 2d Mot.
1.) Henry, did not name Erburu as a defendant in the TAC or the
Second Amended Complaint that preceded it, see In re Marsh &
McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No. 161, but
she does include him in one of her opposition documents, see In
re Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt.
No. 178 ("Pl.'s 1st Opp'n"). Because the Court grants the
defendants' motion to dismiss with prejudice, it need not
address the permissibility under Federal Rule of Civil Procedure
15(c) of amending the complaint at this late date to include
Erburu.

## II.  DISCUSSION

### A. Henry's Claim is Not Barred by the Doctrine of Res Judicata

The doctrine of res judicata presumes that "a person should not be twice-vexed by the same claim, and that it is in the interest of society to bring an end to disputes." 18 James Wm. Moore, et al., Moore's Federal Practice ¶ 131.12[2] (3d ed. 2006). "The doctrine bars 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'" EDP Med. Computer Sys. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (quoting In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985)) (brackets in original). The burden of establishing res judicata rests with the defendant. Greenberg v. Bd. of Governors of the Fed. Reserve Sys., 968 F.2d 164, 170 (2d Cir. 1992). Should the defendant meet that burden, the doctrine precludes claims based on "issues actually decided in determining the claim asserted in the first action and issues that could have been raised in the adjudication of that claim." Nat'l Labor Relations Bd. v. United Techs. Corp., 706 F.2d 1254, 1259 (2d Cir. 1983).

The Court's dismissal of numerous claims asserted in the Consolidated Securities Litigation, see In re Marsh & McLennan

<u>Cos., Inc. Sec. Litig.</u>, 04 Cv. 8144 (SWK), 2006 WL 2789860, at
*4 (S.D.N.Y. Sept. 27, 2006) ("<u>Marsh II</u>"); <u>Marsh I</u>, 501 F. Supp.
2d at 496, constitutes final judgments on the merits by a court
of competent jurisdiction. As a result of Judge Berman's
transfer, certain of Henry's claims are subsumed in the
Consolidated Securities Litigation. The parties mainly disagree
as to whether claims in the Consolidated Securities Litigation
and Henry's section 14(a) claim constitute the "same cause of
action" for res judicata purposes. <u>See</u> <u>EDP Med. Computer Sys.</u>,
480 F.3d at 624.

    As an initial matter, however, it is not even clear that
the Director Defendants have established privity between Henry
and the class plaintiffs in the Consolidated Securities
Litigation. "There is no bright line rule for determining when
parties are in privity. Rather, privity is a legal determination
for the trial court as to whether the relationship between the
parties is sufficiently close to support [claim] preclusion."
<u>Phillips v. Kidder, Peabody & Co.</u>, 750 F. Supp. 603, 607
(S.D.N.Y. 1990). "In general, if the interests of a non-party
are represented by a party to the litigation who is vested with
the authority of representation, the non-party may be bound by
the judgment." <u>Id.</u> (internal quotation marks and citation
omitted).

The Director Defendants repeatedly assert that Henry is "a party to the [Consolidated Securities Litigation]." (Defs.' 2d Mot. 2; In re Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No. 179 ("Defs.' 2d Reply") 1.) Although the Court has consolidated the various securities claims against the defendants and appointed lead plaintiffs pursuant to the PSLRA, see In re Marsh & McLennan Cos., 04 Cv. 8144 (SWK), Dkt. No. 38, the standard for appointing lead plaintiffs under the PSLRA is more lenient than the standard for class certification under Federal Rule of Civil Procedure 23. In fact, in order to qualify as the "most adequate plaintiff" under the PSLRA, the movant must only make a preliminary showing that he or she satisfies some requirements of Rule 23(a). Jolly Roger Offshore Fund LTD v. BKF Capital Grp., Inc., 07 Cv. 3923 (RWS), 2007 WL 2363610, at *4 (S.D.N.Y. Aug. 16, 2007) (quoting Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (internal quotation marks and citation omitted)). "'[W]ide ranging analysis under Rule 23 . . . [is] left for consideration of a motion for class certification.'" Id. (quoting Weinberg, 216 F.R.D. at 252).

The absence of class certification is not an automatic indicator of a lack of privity between purported lead plaintiffs and an absent class member. See Ferris v. Cuevas, 118 F.3d 122,

130 (2d Cir. 1997). Yet under the present circumstances,[5] and given the significant due process concerns at stake, <u>see Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 812 (1985), the Court concludes that appointment of lead plaintiffs under the PSLRA alone is insufficient to demonstrate privity for res judicata purposes. Because the Director Defendants have not provided an alternative basis for a finding of privity between Henry and the lead plaintiffs in the Consolidated Securities Litigation, <u>see, e.g.</u>, <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 90-91 (2d Cir. 2005) (explaining--and noting controversial nature of--doctrine of "virtual representation"); <u>Meza v. Gen. Battery Corp.</u>, 908 F.2d 1262, 1266 (5th Cir. 1990), the Court concludes that they have failed to carry their evidentiary burden and declines to dismiss the TAC on res judicata grounds.

Moreover, the unique and tangled procedural history of this case provides further justification for the conclusion that Henry's 14(a) claim is not precluded under res judicata. Henry first made her 14(a) allegations in August 2005, after Judge

---

[5] Henry avers that Lead Counsel in the Consolidated Securities Litigation do not wish to pursue any claims under section 14(a). (Pl.'s Letter 2, Mar. 13, 2007.) Although a lead plaintiff's failure to pursue a claim advocated by absent class members will not automatically preclude class certification, <u>see, e.g.</u>, <u>In re Univ. Serv. Fund Tel. Billing Practices Litig.</u>, 219 F.R.D. 661, 670 (D. Kan. 2004), it is an issue into which the Court must inquire should this litigation reach the class certification stage.

Berman granted her permission to file individually the federal securities claims that were not being pursued by the other shareholders appearing in the derivative action before him. See In re Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144, Dkt. No. 178 ("Pl.'s 1st Opp'n") 3. These claims, including the section 14(a) claims, were transferred to this Court because of their strong similarity to the claims advanced in the Consolidated Securities Litigation. See In re Marsh & McLennan Cos. Derivative Litig., 04 Cv. 8516 (RMB) (DFE), Conf. Tr., June 12, 2006. Nevertheless the Court granted Henry permission to file a separate complaint containing only the 14(a) allegations and excluding the other claims under other provisions of the Exchange Act, which were originally raised before Judge Berman. See In re Marsh & McLennan Sec. Litig., 04 Cv. 8144 (SWK), Dkt. No. 129. Having repeatedly instructed Henry to pursue her section 14(a) claims separately from the Consolidated Securities Litigation, the Court will not now hold that those claims are barred because they "could have been raised" in the consolidated action. Cf. Allen v. Westpoint-Pepperell, Inc., 11 F. Supp. 2d 277, 289-90 (S.D.N.Y. 1990) (holding that res judicata is not applicable to plaintiffs' second suit when "plaintiffs have always been prepared to litigate all their claims at one time," and suit had been parsed into multiple proceedings at

defendants' request), <u>vacated in part on other grounds by</u> <u>Krumme</u>
<u>v. Westpoint Stevens, Inc.</u>, 143 F.3d 71 (2d Cir. 1998).[6]

**B. Defendants' Rule 12(b)(6) Arguments**

Although the defendants do not specify the procedural basis
for their motion to dismiss for lack of a "duty to disclose,"
the Court addresses this argument within the framework
established by Federal Rule of Civil Procedure 12(b)(6). <u>See,
e.g.</u>, <u>Resnik v. Swartz</u>, 303 F.3d 147, 149 (2d Cir. 2002); <u>In re
Am. Express Co. S'holder Litig.</u>, 840 F. Supp. 260, 268 (S.D.N.Y.
1993).

**1. Legal Standard**

In order to survive a Rule 12(b)(6) motion to dismiss, "the
plaintiff must plead 'enough facts to state a claim to relief
that is plausible on its face.'" <u>Ginsberg v. Gov't Props. Trust,
Inc.</u>, 07 Cv. 365 (CSH) (ECF), 2007 WL 2981683, at *17 (S.D.N.Y.
Oct. 11, 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct.
1955, 1974 (2007)).[7] "While a complaint attacked by a Rule

---

[6] Moreover, even if Henry's section 14(a) allegations pertaining
to the 2005 Proxy Statement were barred on res judicata grounds,
the actions giving rise to her claim regarding the 2006
Statement occurred after the filing of the complaint in the
Consolidated Securities Litigation, and therefore res judicata
does not apply to them. <u>See</u> <u>Waldman v. Village of Kiryas Joel</u>,
207 F.3d 105, 113 (2d Cir. 2000) ("[R]es judicata will not bar a
suit based upon legally significant acts occurring <u>after</u> the
filing of a prior suit that was itself based upon earlier
acts.") (internal citation omitted) (emphasis in original).
[7] This Court recently declined to determine to what extent the
Supreme Court's holding in <u>Twombly</u> applies outside the antitrust

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (citations, quotation marks, and alterations omitted). The plaintiff must satisfy a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). However, "[a]sking for plausible grounds to infer [a violation of the securities laws] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the violation]." Twombly, 127 S. Ct. at 1965.

---

context. See In re AOL Time Warner, Inc. Sec. Litig., 503 F. Supp. 2d 666, 671 n.3 (S.D.N.Y. 2007). Subsequent to that decision, however, the Second Circuit explicitly concluded that Twombly is applicable in securities fraud cases. See ATSI Commc'ns., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 & n.2 (2d Cir. 2007); see also In re Coca-Cola Enters. Inc. Sec. Litig., 06 Cv. 0275 (TWT), 2007 WL 2904160, at *1 (N.D. Ga. Oct. 3, 2007); Caiafa, 2007 WL 2815633, at *4. In light of the holding in ATSI Communications, this Court joins courts in other districts by applying Twombly to a section 14(a) claim. See, e.g., Britton v. Parker, 06 Cv. 1797 (MSK) (KLM), 2007 WL 2871003, at *2, *8 (N.D. Colo. Sept. 26, 2007); In re Zoran Corp. Derivative Litig., 06 Cv. 5503 (WHA), --- F. Supp. 2d ---, 2007 WL 1650948, at *6, *22-24 (N.D. Cal. June 5, 2007).

In the context of a securities fraud complaint such as Henry's, there are additional pleading requirements. First, the PSLRA provides that a complaint alleging violations of section 14(a) of the Exchange Act "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made upon information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 381 F. Supp. 2d 192, 213 (S.D.N.Y. 2004) (citing Bond Opp'ty Fund v. Unilab Corp., 99 Cv. 11074 (JSM), 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003)); see also Little Gem Life Scis. LLC v. Orphan Med., Inc., 06 Cv. 1377 (ADM) (AJB), 2007 WL 2695787, at *3 n.4 (D. Minn., Sept. 13, 2007) (collecting cases from multiple circuits).[8] Second, where, as here,[9] a plaintiff's allegations "sound in fraud," Federal Rule of Civil Procedure 9(b) requires the plaintiff to state the circumstances constituting the fraud with particularity. See

---

[8] Henry incorrectly states that this Court has noted that the PSLRA's applicability to section 14(a) claims is unclear. (See Pl.'s 2d Opp'n 14 (citing In re AOL Time Warner, 381 F. Supp. 2d at 241 n.53).) In fact, the Court has stated that the PSLRA's requirements do apply to such claims. See In re AOL Time Warner, 381 F. Supp. 2d at 213. The footnote to which Henry refers does not discuss the PSLRA but rather the Second Circuit's holding in Rombach v. Chang, which addresses the applicability of Federal Rule of Civil Procedure 9(b). See 355 F.3d 164 (2d Cir. 2004).
[9] Henry repeatedly uses language of fraud in the TAC. (See Defs.' 1st Mot. 11 n.4 (quoting TAC language that sounds in fraud).)

13

Fed. R. Civ. P. 9(b); Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004); see also In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 197 (3d Cir. 2007) (citing Rombach when reiterating that Rule 9(b) pleading requirements apply to section 14(a) claim that sounds in fraud); In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005); In re U.S. Office Prods. Sec. Litig., 326 F. Supp. 2d 68, 80-81 (D.D.C. 2004) (collecting pre-Rombach cases from various circuits).[10]

When considering a motion to dismiss, the "court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991); see also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808-09 (2d Cir. 1996) (holding that documents "integral" to the complaint are properly considered on a motion to dismiss); In re Nat'l Media Sec. Litig., 93 Cv. 2977, 1994 WL 397398, at *2 n.6 (E.D. Pa. July 27, 1994) ("Especially in the context of securities litigation, it is appropriate for the court to consider [documents outside the pleadings] if they were partially quoted, referenced, or summarized by the Complaint.") (internal citation

---

[10] Again, although this Court previously declined to consider, absent specific direction from the Second Circuit, whether Rule 9(b) applies to section 14(a) claims, see In re AOL Time Warner, 381 F. Supp. at 241 n.53, it now joins the courts that have decided the issue in the affirmative.

omitted). In addition, "[o]n a motion to dismiss a securities action, a district court may consider documents required to be publicly filed with the S.E.C. that bear on the adequacy of disclosure." <u>City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC</u>, 423 F. Supp. 2d 348, 354 (S.D.N.Y. 2006) (citing <u>Kramer</u>, 937 F.2d at 773-74).

## 2. Duty to Disclose

To state a claim under section 14(a), a plaintiff must allege that: "(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. <u>See Bond Opp'ty Fund</u>, 2003 WL 21058251, at *3 (internal quotation marks and citation omitted).[11] "Omission of information from a

---

[11] Section 14(a) of the Exchange Act provides:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to Section [12] of this title [15 U.S.C. § 78l]."

15 U.S.C. § 78n(a). Rule 14a-9 provides, in relevant part:

proxy statement will violate [Section 14(a) and Rule 14a-9] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." Resnik, 303 F.3d at 151. An omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." Poughkeepsie Sav. Bank v. Morash, 89 Cv. 1778 (SWK), 1989 WL 40008, at *3 (S.D.N.Y. Apr. 14, 1989) (citing TSC Indus., Inc. v. Northrop, Inc., 426 U.S. 438, 449 (1976).

Here, Henry does not allege that disclosure of the alleged wrongdoing by MMC, Marsh, and the Director Defendants was required by the SEC. Rather, Henry alleges that the "omissions of the amply identified neutral facts make other statements in the proxy statements materially false and misleading." (Pl.'s 1st Opp'n 11.) The Court now addresses the defendants' Rule

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to a material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. 240.14a-9(a).

12(b)(6) motion with respect to each of Henry's allegations. Ultimately, the Court concludes that the omissions could not render misleading any representation made by the defendants in the relevant Proxy Statements. Thus, the Court holds that Henry has failed to state a claim upon which relief can be granted.

### a. Failure to Disclose Board Members' Responsibility for the Wrongdoing of Others

Henry's first allegation is that the Proxy Statements should have disclosed the extent to which the members of Marsh's Board of Directors (the "Board") were responsible for Marsh and MMC's illegal activities. Notably, although she does mention certain charges against MMC (see Pl.'s Compl. ¶ 8) and other investigations (see Pl.'s Compl. ¶ 116-17), Henry does not allege that the Proxy Statements failed to disclose any charged offenses[12] or "non-routine" pending litigation involving the Director Defendants, Marsh, or MMC. See Bolger v. First State Financial Servs., 759 F. Supp. 182, 194 (D.N.J. 1991) ("[E]ven after allegations have become the subject of a lawsuit, Regulation S-K requires disclosure only of non-routine pending litigation.") (citing 17 C.F.R. § 229.103). Instead, Henry

---

[12] The Director Defendants have not been the subject of criminal charges and thus stand in contrast to the eight individuals indicted in 2005 in connection with MMC's misconduct. See Press Release, Office of New York State Attorney General Andrew M. Cuomo, Insurance Execs Indicted for Bid Rigging, Fraud (Sept. 15, 2005), available at http://www.oag.state.ny.us/press/2005/sep/sep15a_05.html.

alleges that the defendants violated section 14(a) by failing to disclose hundreds of "material and neutral facts" recited in the TAC and in the complaint in the Consolidated Securities Litigation (a document that Henry incorporates by reference). After reviewing both documents, however, the Court concludes that this allegation ultimately amounts to a claim that the defendants illegally failed to disclose the directors' mismanagement in failing to detect and halt the wrongdoing of other employees. (See Pl.'s Compl. ¶¶ 2 (referencing Director Defendants' "breach of obligations and gross mismanagement"), 116 ("Marsh's illegal bid-rigging practices are a function of management failures at the very top of Marsh's hierarchy, i.e. its Board of Directors."); Pl.'s 1st Opp'n 8 (noting that the Director Defendants are "'outside' directors arguably removed from the underlying fraud").)

Although evidence of "mismanagement" by certain directors is likely relevant to a Proxy Statement pertaining to their re-election, courts in this and other circuits have held that there is no per se rule, under either section 14(a) or Rule 14a-9, requiring the disclosure mere mismanagement or uncharged, unadjudicated criminal activity. See In re Am. Express Co. S'holder Litig., 840 F. Supp. at 269 (holding that, though "information regarding a breach of fiduciary duty" is likely "relevant to shareholders when called upon to elect corporate

18

directors," "[s]ection 14(a) does not require that such uncharged, unadjudicated charges of mismanagement be disclosed"); see also Halpert Enters., Inc. v. Harrison, 02 Cv. 9501 (SHS), 2005 WL 1773686, at *3 (S.D.N.Y. July 26, 2005) (reasoning in dicta that allegations that "members of the Board failed to accuse themselves of wrongdoing for allegedly being oblivious to improprieties perpetuated by others" are insufficient to sustain claim pursuant to section 14(a)); meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P., 260 F. Supp. 2d 616, 634 (S.D.N.Y. 2003) ("Rule 14a-9 does not impose a duty to disclose unsupported allegations of illegality."); Kahn v. Wien, 842 F. Supp. 667, 678 (E.D.N.Y. 1994) ("The Second Circuit has held that the disclosure of unproven allegations is not required in proxy solicitations.") (citing Ciresi v. Citicorp, 782 F. Supp. 819, 823 (S.D.N.Y. 1991), aff'd without opinion by 956 F.2d 1161 (2d Cir. Jan. 29, 1992)), aff'd without opinion by 41 F.3d 1501 (2d Cir. Sept. 29, 1994); In re Browning-Ferris Indus., Inc. S'holder Derivative Litig., 830 F. Supp. 361, 369-70 (S.D. Tex. 1993) (dismissing section 14(a) claim premised on nondisclosure of directors' "failure to institute adequate internal controls"), aff'd without opinion by Cohen v. Ruckelshaus, 20 F.3d 465 (5th Cir. Mar. 22, 1994); General Elec. Co. v. Rowe, 89 Cv. 7644, 1992 WL 277997, at *11 & n.7 (E.D. Pa. Sept. 30, 1992) (concluding that

directors are not required under section 14(a) to disclose their failure to check and report illegal activity of others because such failure is "mismanagement, not self-dealing"); <u>Amalgamated Clothing & Textile Workers Union, AFL-CIO v. J.P. Stevens & Co.</u>, 475 F. Supp. 328, 332 (S.D.N.Y. 1979) (noting that interpreting Rule 14a-9 to require reporting of "illegal intentions" would "do nothing more than license retrospective litigation"), <u>vacated on other grounds by</u> 638 F.2d 7 (2d Cir. 1980).

Notwithstanding the absence of a per se rule requiring disclosure of mismanagement or unproven criminal conduct, "corporations are obligated to disclose facts necessary to ensure that their statements are not misleading. This duty applies to the disclosure of [uncharged, unadjudicated conduct] to the same extent it applies to the disclosure of any other material information." <u>Marsh I</u>, 501 F. Supp. 2d at 469. The Court must therefore ask whether the omissions cited by Henry "are sufficiently connected to Defendants' existing disclosures to make those public statements misleading." <u>Id.</u>; <u>In re Par Pharm., Inc. Sec. Litig.</u>, 733 F. Supp. 668, 675 (S.D.N.Y. 1990); <u>see also</u> <u>Goldsmith v. Rawl</u>, 755 F. Supp. 96, 97-98 (S.D.N.Y. 1991).

Henry does not identify any particular statements regarding the nominee directors that are made false or misleading by the identified omissions. Instead, she argues that the omissions

make misleading the "implicit endorsement" conveyed by the proposal for the directors' re-election. (See Pl.'s 1st Opp'n 12.) Henry's argument thus runs counter to existing case law, which has premised liability on the link between an omission and a specific public statement. See Menkes v. Stolt-Nielsen S.A., 03 Cv. 409 (DJS), 2005 WL 3050970, at *7-*8 (D. Conn. Nov. 10, 2005) (collecting cases).

Moreover, the corporation's disclosure requirement extends only as far as is necessary "to prevent conveying, through its own public statements, a false impression to the investor and not for the sake of merely improving an investor's perspective." Id. at *7. Consequently, a plaintiff in a section 14(a) action must show that there was "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." TSC Indus., 426 U.S. at 449. "The 'total mix' of information may include data sent to shareholders by a company in addition to its proxy materials," as long as the relevant information is not "'buried' in unrelated discussions." United Paperworkers Int'l Union v. Int'l Paper Co., 985 F.2d 1190, 1198-99 (2d Cir. 1993); see also In re Browning-Ferris Indus., Inc., 830 F. Supp. at 367 n.2. Here, the Annual Reports sent to shareholders along with the 2005 and 2006 Proxy Statements adequately and prominently disclosed the

alleged misconduct of the Company and individual employees. The recitation of allegations in the 2004 Annual Report spans eleven pages. See Marsh & McLennan Companies, Inc., Annual Report 2004 57-68, available at http://www.mmc.com/investors/Annual_2004.pdf ("2004 Annual Report").[13] The 2006 Proxy Statement even directs readers to the relevant portion of the 2005 Annual Report. See Marsh & McLennan Companies, Inc., 2006 Notice of Annual Meeting and Proxy Statement 45, available at http://www.mmc.com/ investors/proxy2006.pdf ("2006 Proxy Statement").[14] The explanations of the allegations contained in the Annual Reports, though not verbatim recitations of the "material and neutral facts" found in the TAC or the complaint in the Consolidated Securities Litigation, contain sufficient detail to allow an investor to factor the alleged wrongdoing into his decisions concerning director elections.

Additionally, when enumerating the work experience and qualifications of the current board members (including those who

---

[13] The Annual Reports and Proxy Statements referenced in this Opinion are also available on the SEC's website. See U.S. Securities & Exchange Comm'n, Company Information: Marsh & McLennan Companies, Inc., http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0000062709&owner=exclude&count=40 (last visited Nov. 13, 2007). For ease of reference, the Court cites to the versions of the Reports and Proxy Statements posted on the Company's website, as the defendants cite these versions in their motion papers.

[14] Although the method of disclosure used in the 2006 Proxy Statement might be superior, the method used in the 2005 Proxy Statement is not legally deficient.

were nominated for re-election), the Proxy Statements indicated for how long each one had been a director of Marsh, see 2006 Proxy Statement 14-18; Marsh & McLennan Companies, Inc., 2005 Notice of Annual Meeting and Proxy Statement 5-8, available at http://www.mmc.com/investors/ proxy2005.pdf ("2005 Proxy Statement")--information that would, when read in conjunction with the Annual Reports, reveal to a shareholder that the nominees had been members of the Board when the alleged illegalities occurred.

Therefore, although the Director Defendants' alleged mismanagement was arguably relevant to their re-election, there was no duty to disclose such information, and certainly no duty to provide any more information than the defendants offered. Consequently, Henry's first allegation fails to state a violation of section 14(a) and Rule 14a-9.

### b. Failure to Disclose Effect of the Options Exchange on Non-Director Wrongdoers

Henry next alleges that the defendants violated section 14(a) by failing to disclose that the proposed Options Exchange could benefit certain unnamed employees who had engaged in wrongdoing. For the reasons that follow, the Court concludes that this allegation also fails to state a claim upon which relief can be granted.

Again, as with the general misconduct of directors, the misconduct of employees is arguably relevant to a vote to approve an employee compensation plan, because a reasonable investor might want to know whether the provision would accrue to the benefit of wrongdoers. Cf. TSC Indus., 426 U.S. at 449; but see United Operating Co. v. Karnes, 482 F. Supp. 1029, 1031 (S.D.N.Y. 1980) (describing as "weak" "the premise that stockholders would be so outraged by the unethical business practices of [corporate employees] . . . that they would refuse to approve [their] compensation"). There is, however, a critical difference between compensation provisions certain to benefit wrongdoers and provisions that benefit large groups of employees and are not in any way a reward for the behavior from which the wrongdoing stemmed.

The Options Exchange was not a performance-based or otherwise discretionary reward. Rather, it applies to any employee holding stock options that exceeded a given exchange price. 2006 Proxy Statement 27 ("Only stock options that were underwater by 25% or more on the date the exchange was approved by stockholders were eligible for the MMC Option Exchange Program."). Moreover, participation in the program was entirely voluntary. See 2005 Proxy Statement 33. Any benefit to an employee who participated in wrongdoing would be purely coincidental.

The TAC does not name a single Marsh employee who engaged in wrongdoing and stood to benefit from the Options Exchange. Moreover, even if such employees were identifiable, it was not possible at the time the Proxy Statements were disseminated to know which employees would decide to participate in the Options Exchange should the shareholders approve it. Therefore, Henry's conclusory allegation that the program "would" benefit direct-- but unnamed--participants in past wrongdoing fails to state a viable cause of action. (Pl.'s Compl. ¶ 131.) See Lewis v. Valley, 476 F. Supp. 62, 65-66 (S.D.N.Y. 1979) (finding alleged employee misconduct immaterial to vote on compensation plan when "[t]here is no allegation of the extent to which any participant in the [alleged wrongdoing] derives benefits from the compensation plans approved"). Henry's claim further fails because, even if it were possible to identify precisely the wrongdoers who would qualify for, and participate in, the Options Exchange, the benefit of the options exchange would "not accrue to them otherwise than as an across-the-board benefit to numerous employees of the same level." Id. at 66.

Additionally, because the Company's senior executive officers were ineligible for the Options Exchange (see Pl.'s Compl. ¶ 131), Henry cannot allege that the alleged misconduct on the part of the Director Defendants themselves was material to its approval. Cf. Gen. Elec. Co. v. Cathcart, 908 F.2d 927,

931 (3d Cir. 1992) ("[A]bsent allegations of self-dealing, corporate directors have no duty to disclose mismanagement or breach of fiduciary duty in proxy materials."); Fry v. Trump, 681 F. Supp. 252, 261 (D.N.J. 1988) (finding that pending litigation against directors is material to proxy statement for vote on provision giving directors retroactive protection against personal liability for negligence in performance of duties). The vote on the Equity Compensation plan therefore cannot provide fodder for an actionable claim under section 14(a).

Finally, the omission of information concerning the possibility that certain, unnamed alleged wrongdoers could benefit from the Options Exchange did not make any particular statement about the Exchange false or misleading. The Proxy Statements contained no endorsement or representation of the quality of the performance of any employee or group of employees. They merely contained explanations that the Options Exchange would make the Company's compensation plan competitive with that of the industry. Therefore, for all of the reasons discussed above, Henry's allegation concerning the Options Exchange is dismissed.

### c. **Failure to Disclose Deloitte's "Long History of Audit Failures" at Marsh and Other Companies**

Henry's final allegation is that the defendants violated section 14(a) by failing to disclose D&T's failure "to fulfill its professional duties as independent auditor of the Company's financial statements," as well as its "long history of audit failures of [other] public companies." (Pl.'s Compl. ¶ 131.) Again, Henry does not allege that the defendants failed to disclose any specific criminal charges or civil litigation. Therefore, even assuming, as is required when adjudicating this motion, that Henry's statements about D&T's "long history" are true, the defendants had no general duty to disclose such "unproven allegations." See Ciresi, 782 F. Supp. at 823 ("[A]n action under section 14(a) is not the proper avenue for a shareholder to challenge the Board of Directors' selection of an accountant.") (internal citation omitted).

Nor did the omission of any allegations against D&T render anything in the Proxy Statements false or misleading. As with her allegation concerning the re-election of certain directors, Henry identifies no particular statement that is made misleading but instead argues that, by asking shareholders to ratify the selection of D&T as the Company's auditor, the "defendants are implicitly stating that [D&T] has the requisite experience and is fit to carry out its obligations . . . ." (Pl.'s 1st Opp'n

12.) The Ciresi Court found no disclosure obligation under nearly analogous circumstances. See Ciresi, 782 F. Supp. at 823 (rejecting argument that omission of allegations of accounting firm's prior audit failures rendered false and misleading defendant's statement that firm was an "independent auditor"). Therefore, Henry's third allegation cannot survive the defendants' Rule 12(b)(6) motion.

### III. CONCLUSION

In sum, the Court concludes that each of Henry's accusations fails to state a claim upon which relief can be granted.[15] Henry has asked for leave to amend the TAC in order to correct any legal insufficiencies. (See Pl.'s 1 Opp'n 15.) Because, however, it is not possible to remedy the defects in the TAC by pleading with more particularity, the TAC is dismissed with prejudice. See Ciresi, 782 F. Supp. at 823-24 (quoting Luce v. Edelstein, 802 F.2d 49, 57 (2d Cir. 1986)).

---

[15] Because the Court has decided the motion on Rule 12(b)(6) grounds, it need not consider the defendants' arguments made pursuant to Rule 9(b) and the PSLRA. Cf. Hines v. Smith, 04 Cv. 5903 (PAC), 2006 WL 2038454, at *4 (S.D.N.Y. July 17, 2006), aff'd on other grounds by 2007 WL 3231098 (2d Cir. Nov. 2, 2007).

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          November 14, 2007