UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE MARSH & MCLENNAN COMPANIES, INC.
SECURITIES LITIGATION

------------------------------------------------------------X

THIS DOCUMENT RELATES TO:
ALL ACTIONS

------------------------------------------------------------X

MDL No. 1744

Master File No. 04 Civ. 8144 (SWK)

**ORDER ON MARSH, INC.'S AND MARSH & MCLENNAN COMPANIES, INC.'S MOTION TO COMPEL PRODUCTION FROM LEAD PLAINTIFFS**

THE UNDERSIGNED SPECIAL MASTER, having been appointed for the purpose of coordinating and supervising discovery in the above-captioned litigation pursuant to Rule 53 of the Federal Rules of Civil Procedure, having read and considered Defendants Marsh & McLennan Companies, Inc.'s and Marsh Inc.'s Motion to Compel Plaintiffs to Produce Documents Responsive to Defendants' First and Second Document Requests dated February 19, 2008 ("Motion to Compel") and the exhibits attached thereto, Lead Plaintiffs' Memorandum of Law in opposition to the Motion to Compel dated March 21, 2008 ("Plaintiffs' Opp.") and the exhibits attached thereto, and Defendants' Reply Memorandum of Law in further support of the Motion to Compel dated April 14, 2008 ("MMC/Marsh Rep.") and the exhibits attached thereto, hereby finds as follows:

I. **Requests Relating to Lead Plaintiffs' Confidential Witnesses (First Doc. Req. No. 26; Second Doc. Req. Nos. 1, 2)**

Request No. 26 in defendants Marsh & McLennan Companies, Inc.'s ("MMC") and Marsh, Inc.'s ("Marsh", and, collectively, "MMC/Marsh") First Document Request to Lead Plaintiffs (the "First Doc. Req.") demands production of "[a]ll documents concerning the

confidential sources referred to in the Complaint, including but not limited to, documents sufficient to identify each and every confidential source." Motion to Compel Ex. A.

Request No. 1 in MMC/Marsh's Second Document Request to Lead Plaintiffs (the "Second Doc. Req.") demands production of "[a]ll documents provided to you by the confidential witnesses referred to in the Complaint and Second Amended Complaint." Id., Ex. B.

Request No. 2 in MMC/Marsh's Second Doc. Req. demands production of "[a]ll documents provided by you to the confidential witnesses referred to in the Complaint and Second Amended Complaint." Id.

Lead Plaintiffs initially objected to these requests on the grounds that the information sought was protected from disclosure by the attorney-client privilege, the attorney work product doctrine and on public policy grounds. See Plaintiffs' Opp. at 4. Lead Plaintiffs subsequently volunteered, in response to MMC/Marsh's "renewed demand", that they would identify the confidential witnesses they intended to call at trial, if any, in advance of the discovery cut-off. Id. at 4. Not satisfied with this accommodation, MMC/Marsh moved to compel responses to each of these requests.

A.   Identification of Confidential Witnesses

In support of its motion to compel MMC/Marsh rely on a line of District Court cases which have ordered plaintiffs to identify confidential witnesses in discovery on the ground that "the work product doctrine does not shield from discovery the identity of persons with knowledge of relevant facts, even if such persons serve as confidential sources during the course of a pre-suit investigation." Brody v. Zix Corp., No. 3-04-CV-1931-K, 2007 WL 1544638, *1 (N.D.Tex. May 25, 2007) (collecting cases). These courts have reasoned that even if the

identities of the confidential witnesses are considered work product, "defendants' need for and interest in this information would overcome the de minimis work product under the balancing process between the work product interest and the interest in discovery." In re Harmonic, Inc. Sec. Litig., 245 F.R.D. 424, 429 (N.D.Cal. 2007) (collecting cases).

In their opposition to the motion to compel Lead Plaintiffs point to a competing line of District Court cases which have reached the opposite result, holding that requiring plaintiffs to identify confidential witnesses "would demonstrate which witnesses that Lead Plaintiff deems important and is [therefore] protected from disclosure by the work-product doctrine." In re Vecco Instruments, Inc. Sec. Litig., No. 05 MD 1695 CMGAY, 2007 WL 274800 (S.D.N.Y. Jan. 29, 2007). See also In re St. Paul Travelers Sec. Litig. II, Civil No. 04-0497 (JRT/FLN), 2007 WL 1424673, *1 (D. Minn. May 10, 2007) (affirming Magistrate Judge's order denying motion to compel identification of confidential witnesses because "the identity of confidential witnesses is protected by attorney work product privilege, and the defendants have not met their burden to overcome the privilege at this stage in the litigation"). Lead Plaintiffs also argue, in opposing the Motion to Compel, that they have "no obligation under Rule 26(a)(1) to disclose the names of Confidential Witnesses that Plaintiffs do not intend to use at trial."[1] Plaintiffs' Opp. at 5.

I am of the opinion that ordering Lead Plaintiffs to identify their confidential witnesses will not, in and of itself, provide MMC/Marsh with an "unfair insight" into Lead Plaintiffs' counsels' mental impressions. Kidder v. Tidewater Marine, LLC, No. Civ.A. 05-1152, 2007 WL 37954, *2 (W.D.La. Jan. 5, 2007). Here, as in the In re Harmonic case, "[p]laintiffs have already revealed their legal strategy by including the CWs' statements in the SAC." In re Harmonic, 245

---

[1] In opposing the motion to compel, lead plaintiffs do not argue that the identities of the confidential witnesses are protected by the attorney-client privilege, and, as such, that aspect of lead plaintiffs' objection to producing this information is overruled.

F.R.D. at 428.  However, even assuming that the identity of the confidential witnesses fall within the scope of the work product doctrine, disclosure of work product "may be required if the party seeking discovery shows a substantial need of the materials and that it is unable to obtain the equivalent without undue hardship."  Elec. Data Systems Corp. v. Steingraber, No. 4:02 CV 225, 2003 WL 21653405, *3 (E.D.Tex. Jul. 9, 2003).  Here, I find that MMC/Marsh's need for this information outweighs whatever work product protection attaches to the identity of the confidential witnesses.  This is particularly because of the large number of potential witnesses Lead Plaintiffs identified in their Rule 26(a)(1) initial disclosures.

Lead Plaintiffs identified, at the outset of discovery, 362 individuals that they believe have discoverable information and have subsequently acknowledged that "certain" of the confidential witnesses referenced in the pleadings are among the names listed in their initial disclosures.  Plaintiffs' Opp. at 7.  This fact makes the present situation materially different from that in In re Vecco, supra., relied on by plaintiffs.  In In re Vecco, the Court found that using depositions to identify the two confidential witnesses on the list of 55 potential witnesses did not present an undue hardship to defendants.  Here, I find the potential witnesses identified by Lead Plaintiffs to be an unmanageable number, particularly since the defendants have been limited to 125 depositions in this case by the Court.

Lead Plaintiffs' reliance on Rule 26(a)(1) to resist MMC/Marsh's demand that they disclose the identity of the confidential witnesses referenced in the pleadings is of no moment. Rule 26(b)(1) requires parties to produce any relevant information in discovery, including "the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1).  See In re Initial Public Offering Sec. Litig., 220 F.R.D. 30, 33-34 (S.D.N.Y. 2003). Therefore, the identification of the confidential witnesses is warranted under Rule 26(b)(1).

Indeed, Lead Plaintiffs themselves do not appear to be claiming that information sought by defendants is not relevant to their claims.

Nor do I find lead plaintiffs' public policy argument compelling. Lead Plaintiffs suggest that a "fear of retaliatory conduct by Marsh against these former employees is a grave concern." Plaintiffs' Opp. at 9. However, plaintiffs have alleged that none of the confidential witnesses are currently employed by Marsh (see Second Amended Complaint ¶¶ 70-87) and have provided no evidence to demonstrate a genuine risk of retaliation here. Therefore, I find that public policy considerations do not prevent MMC/Marsh from discovering the identities of the 17 confidential witnesses identified in the pleadings. Brody, 2007 WL 1544638, *2.

Based on the foregoing, MMC/Marsh's motion is granted to the extent that Lead Plaintiffs are ordered to identify, within twenty (20) days of the date of this Order, the confidential witnesses referenced in the complaint and second amended complaint in this action.

    B.    <u>Documents Provided by Confidential Witnesses</u>

MMC/Marsh also moved to compel production of documents provided by the confidential witnesses to the Lead Plaintiffs (Second Doc. Req. No. 1).[2] Lead Plaintiffs' resist producing these documents, which are obviously relevant to the claims asserted herein, on the ground that such production would reveal the identity of the Confidential Witness and that MMC/Marsh has not established a "substantial need" for the documents. Plaintiffs' Opp. at 8. This argument is now moot in light of my order above, and, therefore, Lead Plaintiffs are ordered to produce documents responsive to Second Doc. Req. No. 1 within ten (10) days of the date of this Order.

---

[2] Lead Plaintiffs report that the "only documents responsive to this request were produced by a single witness", that "most of those documents had been produced by the Marsh Defendants and that none of these documents were used in preparing the Complaint in this case." Plaintiffs' Opp. at 8.

C.  Documents Provided to Confidential Witnesses

Finally, Lead Plaintiffs have reported that they have no documents responsive to Second Doc. Req. No. 2, which requested documents provided to any Confidential Witnesses by Plaintiffs. Id. at 8, n. 4. Accordingly, MMC/Marsh's motion to compel production by plaintiffs of documents responsive to Second Doc. Req. No. 2 is dismissed as moot.

**II. Documents Relating to Lead Plaintiffs' Investments in Insurance-Related Securities (Second Doc. Req. No. 3)**

MMC/Marsh's Second Doc. Req. No. 3 demands production of "[a]ll documents concerning any securities of issuers with insurance-related business, including, but not limited to, issuers that provide insurance coverage or insurance brokerage services or issuers whose subsidiaries or affiliates provide insurance coverage or insurance brokerage services, that you purchased, sold, exchanged, held or otherwise traded or invested in." Motion to Compel Ex. B. MMC/Marsh assert that such documents are "relevant to issues of plaintiffs' reliance on the Marsh Defendants' alleged misrepresentations as well as their suitability as class representatives." Motion to Compel at 6.

Lead Plaintiffs object to producing documents responsive to this Request arguing that they have already produced thousands of documents which discuss how their investments were made and that "[n]one of this discovery suggests that Plaintiffs pursued an 'insurance-related' strategy, or more importantly, that this somehow bears on Plaintiffs' adequacy to represent the class." Plaintiffs' Opp. at 11.

MMC/Marsh counter by asserting that while they have "received some documents relating to plaintiffs' general investment policies and practices, plaintiffs have failed to produce information concerning the detail of their specific investments in securities other than MMC securities." MMC/Marsh Reply at 9. Defendants add that the "investment records and other

documents relating to plaintiffs' trading activities are heavily redacted and only disclose information concerning MMC securities", and have attached examples of such redacted documents to their Reply that substantiate this claim. See Id. at 10 and Exhibit B.

I find that the request at issue seeks documents that could assist MMC/Marsh in "rebutting the presumption of reliance arising in the 'fraud on the market' context." In re Priceline.Com Inc. Sec. Litig., No. 3:00CV01884(DJS) 2005 WL 1366450, *3 (D.Conn. Jun. 7, 2005). In addition to relevance on the merits, the information sought by MMC/Marsh may lead to evidence relevant to the pending class certification motion. See Deguilis v. LXR Biotechnology, Inc., 176 F.R.D. 123, 127 (S.D.N.Y. 1997) (noting that the "determination of whether a class representative is 'typical' might be affected by any unique defenses relating to an investment strategy") (collecting cases).

Data concerning lead plaintiffs investments in securities issued by insurance-related companies is information that is not immune from disclosure on privilege or confidentiality grounds. This information is available to the thousands of beneficiaries of the plaintiff funds. Accordingly, there is no public policy reason for not providing it to MMC/Marsh. Requiring Lead Plaintiffs to produce documents responsive to Second Doc. Req. No. 3 would also not appear to impose an undue burden on plaintiffs since they apparently need only to provide unredacted versions of documents that have already been searched for and produced in redacted form.

Therefore, Lead Plaintiffs are ordered to produce, within thirty (30) days of the date of this Order, documents sufficient to show their purchase and/or sale of securities issued by insurance-related companies from January 1, 1999 to the present. Lead Plaintiffs are not required to produce every document and e-mail in their possession, custody and control relating

7

to such investments. Once MMC/Marsh has reviewed this production they may move for a more complete production of documents relating to such trading activity, and plaintiffs are free to oppose that application.

Of course, ruling that documents showing investments in securities issued by insurance-related companies ought to be produced in discovery is in no way intended to opine upon the viability of the defenses that MMC/Marsh seeks to assert using such information, either as to Lead Plaintiffs' reliance or their suitability as fiduciaries for the class. However these are defenses that the defendants may assert and, as such, they are entitled to discovery on this issue.

If there is uncertainty as to whether a document or set of documents fall within the scope of this Order, or are protected from disclosure on the grounds of attorney-client privilege or some other applicable privilege, counsel for Lead Plaintiffs are directed to submit such documents to me for *in camera* review.

### III.    Documents Relating to Criminal Proceedings and Regulatory Investigations Involving Lead Plaintiffs (First Doc. Req. No. 18)

MMC/Marsh's First Doc. Req. No. 18 demands production of "[a]ll documents concerning any criminal or regulatory investigations or proceedings you or any of your current or former officers, directors, representatives, affiliates or agents have been involved in a any time." Motion to Compel, Ex. A. In the Motion to Compel, MMC/Marsh have apparently narrowed this request to documents relating to certain publicly reported criminal charges and investigations involving lead plaintiff Ohio Bureau of Workers Compensation ("BWC") and lead plaintiff New Jersey Department of the Treasury, Division of Investment ("NJDOI"). See Motion to Compel at 7. MMC/Marsh contend that this information "bears upon Lead Plaintiffs' adequacy as class representatives and whether Lead Plaintiffs can establish reliance." Id. Lead Plaintiffs argue

that this discovery, which is directed toward the class certification process, is little more than harassment and, as such, should be rejected.

  A.  <u>The New Jersey Investigation</u>

The NJDOI specifically opposes this application on the ground that the investigation in question involves charges of under funding and over reporting by the New Jersey Department of Treasury's Division of Pensions and Benefits ("DOPB"). NJDOI argues that DOPB is a "totally separate division of the Department of Treasury." Plaintiffs' Opp. at 24. Thus, NJDOI continues, the documents sought have "nothing to do with the NJDOI, let alone its trustworthiness, its purchase of MMC securities or its ability to serve as an adequate lead plaintiff." <u>Id</u>. at 25.

MMC/Marsh counters by noting that NJDOI "is the fiduciary for the funds administered by DOPB" and that the public reports on the state of the pension funds for which NJDOI is the fiduciary "failed to indicate that statutory funding obligations were not being met, and may even have falsely reported that these obligation <u>were</u> being met." MMC/Marsh Reply at 16-17 (emphasis in original). Contrary to NJDOI's assertion as to the separate nature of the two agencies, I find that since NJDOI is the fiduciary for the funds administered by DOPB there is enough of a connection between the investigation at DOPB on the one hand, and NJDOI and the pension funds for which it is responsible – three of which, as defendants point out, are lead plaintiffs in this case – on the other, to allow discovery of documents in NJDOI's possession, custody or control relating to the investigation of DOPB.

The reported decisions cited by NJDOI in opposition to this motion are not on point and therefore do not support denial of defendants' motion. As noted by MMC/Marsh, these decisions address motions for class certification. Here, however, we address the proper scope of

discovery not the ultimate question as to whether NJDOI is a proper representative of the certified class.

Therefore, NJDOI is ordered to produce documents concerning the investigation of DOPB within thirty (30) days of the date of this Order. If there is uncertainty as to whether a document or set of documents fall within the scope of this Order, or are protected from disclosure on the grounds of attorney-client privilege, the attorney work product doctrine or some other applicable privilege, counsel for Lead Plaintiffs are directed to submit such documents to me for *in camera* review.

### B. The Ohio Investigation

Defendants also seek documents relating to the investigation of BWC. Plaintiffs argue in opposition to this aspect of the motion that such documents are not relevant to this action, and that reforms instituted at BWC in 2005 have "ferreted out and prosecuted all wrongdoing, and enacted widespread changes to BWC's organizational structure to prevent the lack of oversight that led to the wrongdoing of its former employees." Plaintiffs' Opp. at 30.

MMC/Marsh argues in reply that the information they seek includes conduct during the purported class period, which pre-dates the reforms, as "Lead Plaintiffs' practices at the time they made the investments at issue are relevant to whether they can prove their claims are subject to unique defenses." MMC/Marsh Reply at 15. MMC/Marsh also submits press reports which suggest that the reforms at BWC have not been universally well-received. Id., Ex. C.

I find that the press reports relating to the investigation of BWC provide sufficient grounds for the discovery sought by MMC/Marsh. What weight to be placed on this information, if any, will be determined by the Court when deciding plaintiffs' motion for class

certification. Accordingly, Lead Plaintiffs are ordered to produce documents relating to the investigation of BWC within thirty (30) days of the date of this Order.

                                                          s/ L. Peter Parcher
                                                          L. PETER PARCHER
                                                          Special Master

Dated: New York, New York
        May 28, 2008

80424523.1