UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
IN RE MARSH & MCLENNAN COMPANIES,  x     MDL No. 1744
INC. SECURITIES LITIGATION         x
------------------------------------X     04 Cv. 8144 (SWK)
                                   x
THIS DOCUMENT RELATES TO:          x
ALL ACTIONS                        x
                                   x     **OPINION AND ORDER**
------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

On May 28, 2008, Special Master L. Peter Parcher issued an
order directing the lead plaintiffs in the above-captioned
litigation ("Lead Plaintiffs") to produce, <u>inter alia</u>, documents
relating to the seventeen confidential witnesses ("CWs") cited
in the consolidated class action amended complaint (the "AC")
and the second amended class action complaint (the "SAC"), and
documents concerning criminal and regulatory investigations
involving two institutional lead plaintiffs, the State of New
Jersey, Division of Investment ("NJDOI"), and the Ohio Bureau of
Workers Compensation ("BWC"). Lead Plaintiffs then filed a
timely objection. For the reasons that follow, the Court affirms
the Special Master's decisions, but narrows the scope of
discovery to be obtained from NJDOI and BWC.

## I.   **BACKGROUND**

The instant discovery dispute arises in a securities action
brought by Lead Plaintiffs on behalf of all persons and entities
who purchased, or otherwise acquired, securities issued by Marsh

& McLennan Companies, Inc. ("MMC") between and including October 14, 1999 and October 13, 2004. Familiarity with the factual and procedural history of this case is presumed. See In re Marsh & McLennan Cos. Sec. Litig., 501 F. Supp. 2d 452 (S.D.N.Y. 2006) (granting in part and denying in part motion to dismiss); In re Marsh & McLennan Cos. Sec. Litig., 04 Cv. 8144 (SWK), 2006 WL 2789860 (S.D.N.Y. Sept. 27, 2006) (granting permission to file SAC and dismissing certain claims with prejudice).

Lead Plaintiffs filed the SAC on October 13, 2006. 04 Cv. 8144 (SWK), Dkt. No. 142. The SAC relies in part on information provided by seventeen CWs, whom Lead Plaintiffs describe as "former Marsh employees." (Lead Pls.' Obj. 1.) On October 26, 2006, the Court appointed Special Master Parcher to coordinate and supervise discovery, and to oversee settlement negotiations between the parties. 04 Cv. 8144 (SWK), Dkt. No. 143. To date, the parties have engaged in significant discovery, reviewing and producing millions of pages of documents. (See Lead Pls.' Obj. 4; Defs.' Opp'n 3.) In addition to the documents that Lead Plaintiffs have already produced, Defendants MMC and Marsh, Inc. ("Marsh") (collectively, the "Marsh Defendants") have sought production of, inter alia, "[a]ll documents concerning the confidential sources referred to in the [AC and SAC], including but not limited to, documents sufficient to identify each and every [CW]" (Lead Pls.' Obj., Declaration of Mary S. Thomas

("Thomas Decl.") Ex. 1A, at 8); "all documents provided to [Lead Plaintiffs] by the [CWs] referred to in the [AC] and [SAC]" (Thomas Decl. Ex. 1B, at 5); and "documents relating to criminal charges and investigations" concerning both BWC and the New Jersey pension systems (Thomas Decl. Ex.1, at 7), as discussed in certain newspaper articles (see Thomas Decl. Ex. 1G, 1H).[1]

After Lead Plaintiffs refused to produce the aforementioned documents, the Marsh Defendants filed a motion to compel, which the Special Master granted in an order (the "Order") filed on May 28, 2008. See 04 Cv. 8144 (SWK), Dkt. No. 206. Lead Plaintiffs now object to Parts I.A-B and III of that Order.[2] The Court reviews each section in turn.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 53(f)(3) and (4), the Court reviews de novo the Special Master's findings of fact and conclusions of law. For the reasons discussed below, the Court affirms the decisions announced in the contested sections of the Order, but narrows the scope of the discovery that the Marsh Defendants may obtain.

---

[1] Although the Marsh Defendants initially sought production of documents "concerning any criminal or regulatory investigations or proceedings" involving the Lead Plaintiffs (Thomas Decl. Ex. 1, at 1 (emphasis added)), they subsequently agreed to limit their request to documents related to the investigations and proceedings discussed in the articles (Thomas Decl. Ex. 4 at 2).
[2] Neither party has objected to Part I.C or Part II of the Order.

## A. Discovery Concerning CWs

In their opposition to the Marsh Defendants' motion to compel, Lead Plaintiffs argued that their CWs' identities, and any documents the CWs may have produced, are protected from disclosure by the attorney work-product doctrine and principles of public policy. (See Thomas Decl. Ex. 2, at 4.) In the Order, Special Master Parcher rejected both of these arguments. Specifically, he concluded that the work-product doctrine was not applicable and, even if it were, the Marsh Defendants' need for the information would outweigh any minimal work product protection that attached. (See Order 3-4.) The Special Master also rejected Lead Plaintiffs' public-policy argument, concluding that they had failed to demonstrate that the identification of the CWs would create a genuine risk of retaliation by Marsh against its former employees. (Order 5.)

Lead Plaintiffs contend that the Special Master's conclusion in Part I of the Order (a) ignores Second Circuit case law holding that confidential-witness information falls within the ambit of the work-product doctrine, (b) fails to explain why the Marsh Defendants have a substantial need for the CW information, and (c) underestimates the risk of retaliation associated with the disclosure of the CWs' identities. (See Lead Pls.' Obj. 8-13.) The Court addresses each contention in turn.

### 1. The CWs' Identities[3] are Discoverable

In April 2007, Lead Plaintiffs, pursuant to Federal Rule of Civil Procedure 26(a)(1), provided the defendants with a list of individuals possessing discoverable information that Lead Plaintiffs "may use to support [their] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). This list, however, only included those CWs whom Lead Plaintiffs currently expect to call as trial witnesses.[4] (Lead Pls.' Obj. 5.) Lead Plaintiffs refused to supplement that list to include CWs whom they do not currently intend to call at trial, claiming that such discovery is not called for under Rule 26(a)(1). (Lead Pls.' Obj. 6.)

Contrary to Lead Plaintiffs' assertions, however, Rule 26(a)(1) does not define the scope of all possible witness disclosures. Rule 26(b) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including . . . the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Thus, "under Rule 26(b)(1), the fact that plaintiff does not intend to call [undisclosed] witnesses at

---

[3] Because Lead Plaintiffs' opposition to all CW-related discovery derives solely from their desire to protect the CWs' identities (see Lead Pls.' Reply 3 ("Lead Plaintiffs . . . oppose producing [documents provided by CWs], not because their contents are otherwise protected, but because production will reveal the identity of one of the [CWs].")), the Court's analysis focuses mainly on the request for disclosure of the CWs' names.

[4] The list, of course, did not identify CWs as such.

trial is irrelevant," for "[a] literal reading of the Rule
requires the disclosure of the identities of all individuals who
have knowledge of any discoverable matter, whether or not the
individual will be called as a witness." Norflet v. John Hancock
Fin. Servs., Inc., 04 Cv. 1099 (JBA), 2007 WL 433332, at *2 (D.
Conn. Feb. 5, 2007). See also In re Init. Pub. Offering Sec.
Litig., 220 F.R.D. 30, 33-34 (S.D.N.Y. 2003) (holding that Rule
26(a)(1) did not require plaintiffs to disclose identities of
individuals whose information they did not intend to use at any
stage of proceeding, but noting that such information is
discoverable under Rule 26(b)(1)).

Because Lead Plaintiffs relied upon the CWs in drafting the
SAC, the CWs possess discoverable information. See Miller v.
Ventro Corp., 01 Cv. 1287 (SBA) (EDL), 2004 WL 868202, at *2
(N.D. Cal. Apr. 21, 2004); In re Init. Pub. Offering, 220 F.R.D.
at 33-34. The Court therefore concludes that the identities of
all CWs, even those whom Lead Plaintiffs do not intend to call
at trial, are discoverable, and Lead Plaintiffs' only valid
justification for nondisclosure is a claim of privilege.

## 2. The CW Information Enjoys Limited, If Any, Work-Product Protection

Lead Plaintiffs claim that the identities of the CWs are
attorney work product, the disclosure of which would "reveal the
attorney thought process in creating the [AC and SAC] and allow

unwarranted insight into how Lead Plaintiffs' attorneys evaluated information during their investigation." (Lead Pls.' Obj. 10.) "There is no binding authority on the question of whether the identities of the CWs in a securities class action are discoverable." Miller, 2004 WL 868202, at *1. The district courts that have addressed the issue have therefore reached varying, and frequently fact-specific, outcomes. See id. (collecting cases); Order 2-3 (collecting cases). The Court need not reach this issue, however, because even assuming that the identities of the CWs qualify as attorney work product, the circumstances of this case justify overriding the privilege.

First, any privilege that does attach is limited in nature. Unlike interview notes or other documents prepared by counsel in connection with confidential witnesses, the relationship between witness identities and an attorney's case strategies or mental impressions is much more attenuated. See, e.g., In re Harmonic, Inc. Sec. Litig., 245 F.R.D. 424, 429 (N.D. Cal. 2007) (noting that confidential witness identities constitute factual, as opposed to opinion, work product, and contain "minimal substantive content") (citations omitted).[5] Additionally, in this

---

[5] Lead Plaintiffs have also failed to explain why the revelation of the identity of a confidential witness referenced in a complaint reveals more about an attorney's mental processes than does the identification of a witness by name in the complaint itself. Cf. In re Harmonic, 245 F.R.D. at 428 ("Plaintiffs have already revealed their legal strategy by including the CWs'

case, Lead Plaintiffs admit that they must eventually identify those CWs who will serve as trial witnesses, and even offer to do so voluntarily at a specified future date. (Lead Pls.' Obj. 6.) Thus, with regard to these CWs, "the issue of disclosure is really a matter of when, not whether." Miller, 2004 WL 868202, at *2. Furthermore, Lead Plaintiffs indicate that it is theoretically possible to identify many of the CWs by comparing the descriptions of the CWs in the SAC to the list of witnesses disclosed pursuant to Rule 26(a)(1). (See Lead Pls.' Obj. 10-11; Lead Pls.' Reply 2.) Thus, there is actually little confidentiality at stake. Cf. Miller, 2004 WL 868202, at *2 ("[T]o the extent that the complaint enables identification, there is no confidentiality to preserve."). See also In re Harmonic, 245 F.R.D. at 428-29.

### 3. Even if the CW Information is Attorney Work Product, Disclosure is Warranted in this Case

A party can obtain discovery of privileged material otherwise discoverable under rule 26(b)(1) if it "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Assuming arguendo that some work-product protection attaches to the identities of the CWs, the circumstances of this case

statements in the SAC. It is obvious that Plaintiffs considered these . . . CWs' knowledge important.").

justify disclosure of information pertaining to the seventeen CWs. The CWs provided highly relevant information concerning specific instances of Marsh's alleged wrongdoing. Moreover, at least one of the CWs provided Lead Plaintiffs with documents that have not been produced in this litigation (Thomas Decl. Ex. 2, at 8), and Lead Plaintiffs have not indicated that these documents are obtainable by other means.

Courts addressing the work-product privilege as it pertains to confidential witnesses have often treated the two-step showing set forth in Rule 26(b)(3)(A)(ii) as an amalgam and arrived at a fact-specific determination as to whether disclosure was warranted. See e.g., In re Harmonic, 245 F.R.D. at 429; In re Priceline.com Inc. Sec. Litig., 00 Cv. 1884 (DJS), 2005 WL 1366450, at *4 (D. Conn. June 7, 2005); Miller, 2004 WL 868202, at *2; In re Aetna Inc. Sec. Litig., Civ. A. MDL 1219, 1999 WL 354527, at *4 (E.D. Pa. May 26, 1999) ("Avoidance of the time and effort involved in compiling a [list of sources] is, in this case, a sufficient showing of need.") (internal quotation and citation omitted). A review of this kind reveals that the Marsh Defendants have provided sufficient justification for disclosure.

Lead Plaintiffs have issued a list of 362 individuals who possess information that Lead Plaintiffs intend to use to support their case. (Defs.' Opp'n 9; Lead Pls.' Obj. 5.) This is

a substantial number. Moreover, as discussed <u>supra</u> Part II.A.1,
this list does not include the CWs whom Lead Plaintiffs do not
currently intend to call at trial. Under the scheduling order
that governs this case, the parties are limited to 125
depositions per side. <u>See</u> 04 Cv. 8144 (SWK), Dkt. No. 166 ¶ 8.
Without the requested disclosures, the Marsh Defendants would
only be able to identify, and thereby obtain documents from, CWs
by exhausting all of the depositions permitted under the
scheduling order, and even then, some witnesses and (perhaps)
documents would remain beyond their grasp.[6]

   This situation is thus fundamentally different from one in
which the defendant seeks to narrow an all-inclusive list of
sources, <u>cf.</u> <u>Norflet</u>, 2007 WL 433332, at *2-*3 (granting motion
to compel in part because "plaintiff has failed to take the
fundamental first step required under Rule 26(b)(1), to provide
the defendant with the names and locations of all individuals,
interviewed or not, with knowledge of discoverable material"),
or from those where the defendant could ascertain confidential

---

[6] The Court rejects Lead Plaintiffs' contention that a basic
comparison of the CW descriptions in the SAC with the list of
Rule 26(a)(1) witnesses would allow the Marsh Defendants to
identify all CWs with minimal depositions. Although some
descriptions of CWs may be specific enough to allow
identification (<u>see</u>, <u>e.g.</u>, SAC ¶¶ 79, 80), others are far more
vague (<u>see</u>, <u>e.g.</u>, SAC ¶¶ 86, 87). More importantly, it is
impossible for the Marsh Defendants to perform the cross-check
suggested by the Lead Plaintiffs for those CWs not included on
the Rule 26(a)(1) list.

witnesses' identities through a relatively small number of depositions, see In re Veeco Instruments, Inc. Sec. Litig., 05 Md. 1695 (CM) (GAY), 2007 WL 274800, at *1 (S.D.N.Y. Jan. 29, 2007) (denying motion to compel and indicating that identifying three confidential sources from list of 55 potential witnesses would not be "unmanageable" task); In re MTI Tech. Corp. Sec. Litig. II, 00 Cv. 745 (DOC), 2002 WL 32344347, at *4 (C.D. Cal. June 13, 2002) (denying motion to compel on ground that requiring defendants to ascertain 6 confidential sources from "limited universe" of 71 individuals with discoverable information did not constitute undue hardship).

The Marsh Defendants should not be forced to exhaust their share of depositions only to discover information with, at most, limited work-product protection--protection that can be maintained to some degree by setting limits on the contours of discovery. See, e.g., Miller, 2004 WL 868202, at *2 ("Plaintiffs need not disclose . . . the substance of any interviews, . . . [or] link up any particular CW with a paragraph in the complaint, and may identify the witnesses in any order."). Therefore, disclosure of the CW-related discovery sought by the defendants is warranted. Cf. In re Harmonic, 245 F.R.D. at 429; In re Priceline.com, 2005 WL 1366450, at *4; Miller, 2004 WL 868202, at *2; In re Aetna, 1999 WL 354527, at *4.

### 4. Fear of Retaliation Does Not Justify the Withholding of Discovery Material

Lead Plaintiffs also argue that the Special Master improperly discounted the risk of retaliation that the CWs would suffer should their identities come to light. This contention is less an argument against discovery and more an argument pertinent to the imposition of a protective order limiting access to the requested information. Any such motion must be premised on good cause, see Fed. R. Civ. P. 26(c)(1), and conclusory statements regarding retaliation, such as those that appear in Lead Plaintiffs' Objection, will not suffice. See 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2035 (2007) (noting inadequacy of conclusory statements in establishing good cause).

In sum, the Special Master did not err in his Order mandating the disclosure of the CWs' identities and the documents they provided. Lead Plaintiffs shall therefore produce this information in accordance with the terms of the order that follows this Opinion.

### B. Discovery Concerning Investigation of the New Jersey Pension System

In Part III.A of the Order, Special Master Parcher granted the Marsh Defendants' request for documents concerning investigations of the New Jersey Pension system by the Securities and Exchange Commission ("SEC") and the United States

Attorney's Office ("USAO"), on the ground that such information could bear upon NJDOI's adequacy as a class representative. (<u>See</u> Order 9-10.) Lead Plaintiffs contend that the Special Master erred by (a) refusing to consider class-certification case law on the issue of whether the requested discovery fulfilled Rule 26(b)'s relevancy requirement, and (b) concluding that information regarding an investigation implicating the New Jersey Department of Treasury's Division of Pensions and Benefits ("DOBP"), a separate Treasury division from NJDOI, is relevant to NJDOI's adequacy as a class representative. (Lead Pls.' Obj. 18.)

With respect to Lead Plaintiffs' first assignment of error, the Court concludes that (a) the Special Master did not improperly overlook relevant precedent, and (b) even if he had, the Court's own review of that case law shows that Lead Plaintiffs' arguments regarding relevancy lack merit. In the Order, the Special Master stated that the cases cited by Lead Plaintiffs "are not on point" because they address "the ultimate question as to whether NJDOI is a proper representative of the certified class," and not the threshold determination of "the proper scope of discovery." (Order 9-10.) As an initial matter, this comment does not, as Lead Plaintiffs intimate, demonstrate that the Special Master rejected the case law that they presented without even reviewing its contents. His later order

instead suggests that he examined that case law but found it unpersuasive because it provided guidance only as to the weight to be accorded to certain, already-discovered information, and not as to the propriety of disclosing that information during discovery. (04 Cv. 8144 (SWK), Dkt. No. 216 ("Reconsideration Order") 2.) Therefore, it is unlikely that the Special Master improperly overlooked relevant material in reaching his decision.

Even assuming _arguendo_ that the Special Master's analysis was incomplete, the Court's own review of the case law yields the same conclusion. Because many courts--including those in the case law cited by Lead Plaintiffs--review information regarding investigations, charges, and determinations of wrongdoing in deciding whether a proposed class representative will adequately represent a putative class, see, e.g., In re Leapfrog Enters., Inc. Sec. Litig., 03 Cv. 5421 (RMV), 2005 WL 3801587, at *4 (N.D. Cal. Nov. 23, 2005); In re Surebeam Corp. Sec. Litig., 03 Cv. 1721 (JM) (PDR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004); In re Network Assocs. Sec. Litig., 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999), that information is relevant to the class-certification inquiry. The cases upon which Lead Plaintiffs primarily rely are examples in which courts have made fact-specific determinations that the existence of particular investigations, prosecutions, or convictions is not persuasive

(in that it fails to rebut the presumption of adequacy afforded to a lead plaintiff)--and not that it is utterly <u>irrelevant</u> or <u>inadmissible</u>. <u>See</u>, <u>e.g.</u>, <u>In re Leapfrog</u>, 2005 WL 3801587, at *4 (holding that past securities law infractions did not render lead plaintiff inadequate because "character" of institution is difficult to discern and cited wrongdoing was less severe than that found to be persuasive in other cases); <u>see also</u> <u>In re</u> <u>Waste Mgmt., Sec. Litig.</u>, 128 F. Supp. 2d 401, 419, 432 (S.D. Tex. 2000) (appointing state retirement plan and trust fund as lead plaintiff despite competing movant's assertion of inadequacy based on criminal investigation of pension-asset disposition). The Court therefore concludes that, as a general matter, courts have discretion to permit discovery relating to an institutional plaintiff's possible misconduct or criminality.

Lead Plaintiffs alternatively argue that the discovery sought by the Marsh Defendants is improper because the SEC and USAO investigations did not involve the legality of NJDOI's activities under the structure of the New Jersey Pension System. (Lead Pls.' Obj. 18-21; Lead Pls.' Reply 6-10.) After the Special Master granted the discovery in question, he allowed Lead Plaintiffs to submit further information on the issue, deeming it a motion for reconsideration. (Reconsideration Order 1, 2 n.1.) Lead Plaintiffs submitted the declaration of William G. Clark (the "Clark Declaration"), Director of the NJDOI, 04

Cv. 8144 (SWK), Dkt. No. 215, which explains in further detail the NJDOI's responsibilities and relationship with the DOPB. After reviewing this information, the Special Master reiterated his prior conclusion that discovery was warranted because "NJDOI is a fiduciary of [state pension funds, three of which] are Lead Plaintiffs in this action . . . and . . . DOPB, the apparent target of the investigation in question, is the administrator of the [f]unds." (Reconsideration Order 2.) Lead Plaintiffs dispute this conclusion on several grounds, none of which the Court finds persuasive.

First, Lead Plaintiffs incorrectly assume that the Marsh Defendants may only seek discovery of the elements of the two investigations that the cited articles might identify. Lead Plaintiffs argue that discovery is irrelevant to NJDOI's adequacy as a class representative because it did not prepare certain financial statements referenced in the articles. (See, e.g., Lead Pls.' Obj. 2, 18, 20.) The articles do not indicate, however, that the investigations are confined to the production of these particular documents. In fact, the references to the specific documents merely reflect the fruits of a New York Times inquiry (see Thomas Decl. Ex. 1H (identifying specific financial statements uncovered during "The Times's examination of New Jersey's pension fund")) that predates the investigations by the SEC and USAO. It is neither speculation nor conjecture to posit

that the investigations encompass more than just a review of
several discrete documents, and it is conceivable that this
investigation has included communication with NJDOI, an
examination of its practices, or both.

For this reason, the detailed descriptions of the NJDOI's
responsibilities do not definitively resolve the question of
whether the discovery sought is relevant to the anticipated
motion for class certification. The adequacy determination can
encompass many questions, including, but not limited to, whether
an entity under a "cloud" of suspicion should be put in a
position of trustworthiness, In re Network Assocs., 76 F. Supp.
2d at 1029, whether the distraction of a pending investigation
will undermine a class representative's ability to vigorously
prosecute an action, Laborers Local 1298 Pension Fund v.
Campbell Soup Co., 00 Cv. 152 (JEI), 2000 WL 486956, at *2
(D.N.J. Apr. 24, 2000), and whether the securities purchase that
gave the entity standing to participate in the instant case has
any connection to the alleged wrongdoing under investigation,
id.. Because discovery pertaining to the investigation could
yield information that bears on these or other adequacy
questions, the Court finds it appropriate to allow at least some
of the discovery the Marsh Defendants seek.[7]

---

[7] Lead Plaintiffs interpret the Marsh Defendants' opposition as
arguing that discovery of investigation materials is also

Nonetheless, some cabining of the requested discovery is justified, so as to prevent the ensuing inquiry from becoming a "fishing expedition." The Marsh Defendants have requested "documents concerning criminal or regulatory investigations or proceedings involving [NJDOI], in their entirety." (Defs.' Opp'n 28.) But although NJDOI's precise role, if any, in the alleged malfeasance of the New Jersey pension system could bear upon its adequacy as a class representative, the activities of other branches of that system are significantly less pertinent. Therefore, the Court limits the Marsh Defendants' discovery to only those documents prepared or received by NJDOI in connection with the SEC and USAO investigations, or other investigation documents in NJDOI's possession that specifically mention NJDOI or discuss its activities.

## C. Discovery Concerning Investigation of BWC

The Marsh Defendants also sought production of documents pertaining to investigations that resulted in the criminal ethics proceedings against, _inter alia_, BWC's former chief financial officer and several of its investment officers and equity traders (the "BWC Case") (_see generally_ Thomas Decl. Ex.

---

relevant to the issue of the typicality of NJDOI's claims, because it calls into question NJDOI's reliance on marketplace information when purchasing the securities in question. (Lead Pls.' Reply 6 n.9.) The Court, however, bases its decision in Part II.B of this Opinion solely on the requested discovery's relevance to the issue of adequacy.

1G), on the grounds that such information is relevant to (a) BWC's adequacy as a class representative, and (b) the typicality of BWC's investments in MMC securities. (See Thomas Decl. Ex. 1, at 7, 9.) The Special Master did not comprehensively articulate his rationale for granting this portion of the Marsh Defendants' motion, stating only that "the press reports relating to the investigation of BWC provide sufficient grounds for the discovery sought by [the Marsh Defendants]." (Order 10.) After conducting a <u>de</u> <u>novo</u> review of the parties' arguments and the relevant case law, the Court concludes that some discovery concerning the BWC Case is warranted.

The Court has determined, for much the same reasons as discussed in Part II.B of this Opinion, that discovery of documents prepared by BWC or given by BWC to law enforcement authorities or regulatory agencies in connection with the BWC Case, is justified because such information could bear upon BWC's adequacy as a class representative.[8]

---

[8] The Marsh Defendants also argue that discovery pertaining to the BWC investigations and charges is relevant to the typicality of BWC's claims, as it could demonstrate that BWC's investments in MMC securities was motivated by factors other than reliance on market information. (See Defs.' Opp'n 26-27.) The Court, however, agrees with Lead Plaintiffs that the Marsh Defendants' previous request--which Lead Plaintiffs have already satisfied-- for "all documents relating to trades in MMC securities" should have encompassed any information bearing upon BWC's reliance. (Lead Pls.' Obj. 33.) Therefore, the Court's decision to allow discovery is based solely on the information's relevance to BWC's adequacy as a class representative.

The Marsh Defendants' original discovery request, however, cannot be read so broadly as to include documents concerning reforms instituted at BWC in response to the BWC Case. (<u>See</u> Defs.' Opp'n 26.) Although these reforms may be relevant to a future determination of BWC's adequacy, the parameters of a discovery request cannot expand at will to accommodate a party's later realization that it should have asked for more. Therefore, any arguments regarding BWC's reform documents must be presented in the first instance to the Special Master.

**III. ORDER**

In light of the foregoing determinations, IT IS HEREBY ORDERED that:

(1) Lead Plaintiffs shall (a) produce documents sufficient to identify the CWs referenced in the SAC, and (b) produce any documents provided to Lead Plaintiffs by the CWs, within 20 days of the date of this Order;

(2) Lead Plaintiffs shall produce all documents concerning the SEC and USAO investigations of the New Jersey pension system that were prepared or received by NJDOI, or that specifically mention NJDOI's activities, within 30 days of the date of this Order;

(3) Lead Plaintiffs shall produce all documents pertaining to the investigations and proceedings involving BWC, as

described in Part II.C of the Court's Opinion, within 30 days of the date of this Order;

(4) If there is uncertainty as to whether a document or set of documents falls within the scope of this Order, or is protected from disclosure on the grounds of attorney-client privilege, the attorney work-product doctrine, or some other applicable privilege, counsel for Lead Plaintiffs shall submit those documents to the Special Master for in camera review;

(5) The deadline for Lead Plaintiffs' motion for class certification established in paragraph 11 of the scheduling order filed on April 18, 2007, 04 Cv. 8144 (SWK), Dkt. No. 166, is hereby vacated. Lead Plaintiffs shall serve and file their motion for class certification on or before September 29, 2008. The defendants shall serve and file their brief in opposition to that motion no later than 45 days after service of Lead Plaintiffs' motion. Lead Plaintiffs' shall file their reply brief no later than 45 days after service of the defendants' reply brief.

The schedule and deadlines established in this Order are subject to amendment (a) at the request of one or more of the parties for good cause shown, or (b) at any time in the discretion of the Court or the Special Master.

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:      New York, New York
            July 30, 2008

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           July 30, 2008

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/08

22